UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CALLAHAN, INC. d/b/a CALLAHAN CONSTRUCTION MANAGERS, <br><br> Plaintiff, <br><br> v. <br><br> ARCH SPECIALTY INSURNACE COMPANY, <br><br> Defendant. | * <br> * <br> * <br> * <br> * <br> * <br> * Civil Action No. 1:25-cv-10412-IT <br> * <br> * <br> * <br> * <br> * |

MEMORANDUM & ORDER

February 27, 2026

TALWANI, D.J.

Pending before the court in this dispute between Plaintiff Callahan Inc., d/b/a Callahan Construction Managers ("Callahan") and Defendant Arch Specialty Insurance Company ("Arch") is Defendant's Motion to Transfer and, Alternatively, Partial Motion to Dismiss the Second Count (M.G.L. c. 93A and 176D) pursuant to Fed. R. Civ. P 12(b)(6) [Doc. No. 10]. For the reasons explained below, Defendant's Motion to Transfer is DENIED and its alternative Partial Motion to Dismiss the Second Count is GRANTED.

**I.    Background**

Callahan, a construction management firm, entered into an insurance policy contract (the "Policy") with insurer Arch. See Am. Compl. ¶¶ 6, 8–9 [Doc No. 15]. The Policy required that Arch "indemnify [Callahan] for Loss under this Policy arising out of a Default of Performance by [Callahan's] Subcontractor under any Covered Subcontract on a Scheduled Project." Jackson Aff. Ex. A, at ECF 8 [Doc. No. 12-1] (emphasis removed); see also Am. Compl. ¶¶ 9–11 [Doc. No. 15]. The Policy covered fourteen projects in Massachusetts, one in New Hampshire, one in

New York, and one in Connecticut. See Sahani Aff., Ex. 2, at ECF 2 [Doc. No. 16-2]; Jackson Aff., Ex. A, at ECF 25 [Doc. No. 12-1].

Plaintiff is a Massachusetts corporation with a principal place of business in Bridgewater, Massachusetts, and an office in White Plains, New York. See Am. Compl. ¶ 4 [Doc. No. 15]; Jackson Aff. ¶ 4 [Doc. No. 12]. Arch is a Missouri corporation with a principal place of business in Kansas City, Missouri. See Am. Compl. ¶ 5 [Doc. No. 15]. The dispute at issue in this case involves the default of Callahan's subcontractor on the New York project, located at 57 Alexander Street, Yonkers, New York (the "57 Alexander Street Project."). See id. ¶ 13. The Policy's choice of law clause states that:

> The laws of the State of New York (without giving regard to conflicts of law provisions thereof) shall apply to any controversy or claim between any Insured and [Arch] arising out of or in any way related to this Policy, including but not limited to disputes as to the meaning, interpretation or operation of any term, condition, definition or provision of this Policy or any alleged breach of this Policy.

Jackson. Aff., Ex. A, at ECF 15–16 [Doc. No. 12-1] (emphasis removed).

Callahan submitted a claim relating to the default on the 57 Alexander Street Project. See Am. Compl. ¶ 13 [Doc. No. 15]. Callahan alleges that its losses from the subcontractor's default amounts to $3,830,000 (the "Loss") and that Arch has not disputed the amount incurred by the default. See id. ¶¶ 15–16. Arch asserts that the Loss is subject to a loss cap, that Arch paid Callahan $951,950, and that Callahan is entitled to no further indemnification under the Policy. See Def. Mem 2 [Doc. No. 11]. Callahan states that the Policy covers the full amount, less the $1,000,000 deductible for every loss. See Am. Compl. ¶ 23 [Doc. No. 15]. Callahan alleges that it notified Arch in writing of the discrepancy of the amount, and Arch refused to change its calculation. See id. at ECF 4, 7.

Callahan filed suit in Massachusetts Superior Court, Plymouth County, alleging breach of contract (Count I), breach of the implied covenant of good faith and fair dealing and violations of

M.G.L. c. 93A and 176D (Count II). See Compl. attached as Ex. A, Notice of Removal [Doc. No. 1-1]. Callahan also sought a declaratory judgment for the amount owed by Arch to Callahan in accordance with the Policy (Count III). See id. Arch removed the action to this court under 28 U.S.C. § 1441, invoking this court's diversity jurisdiction pursuant to 28 U.S.C. § 1332. See Notice of Removal 1 [Doc. No. 1-1].

Arch subsequently filed the pending Motion to Transfer or Partially Dismiss [Doc. No. 10]. Arch seeks to transfer venue to the Southern District of New York, pursuant to 28 U.S.C. § 1404(a), asserting that New York is the proper venue because the action is between parties that each have a connection to New York and because New York law governs the Loss. See Def.'s Mem. 4 [Doc. No. 11]. Alternatively, Arch seeks to dismiss Callahan's statutory claims as barred by the New York choice-of-law provision in the Policy. See id. at 9.[1]

Callahan's Opposition [Doc. No. 17] argues that both public and private factors favor Massachusetts over New York and that a New York choice-of-law provision does not necessitate transfer to the Southern District of New York. See Pl.'s Opp'n at 7–10 [Doc. No. 17]. Additionally, Callahan argues that its Massachusetts statutory claims, alleging violations of M.G.L. c. 93A and 176D, should not be dismissed because these claims relate to Callahan's rights as a contracting party and not to the contract itself, rendering the choice-of-law provision inapplicable. See id. at 17.

---

[1] On March 24, 2025, Callahan filed an Amended Complaint [Doc. No. 15] correcting its name only. The parties have treated the Motion to Transfer or Partially Dismiss [Doc. No. 10] as directed at the Amended Complaint [Doc No. 15].

## II.     Transfer of Venue

### A.     Standard of Review

Pursuant to 28 U.S.C. § 1404(a), a district court may transfer a civil action to any other district or division to which all parties have consented or to any other district or division where the action may have been brought "[f]or the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). The decision to transfer is an "individualized, case-by-case consideration of convenience and fairness" at the discretion of the district court. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 12 (1st Cir. 2009) (quoting Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988)). Because a plaintiff's choice of forum is given presumptive weight, a defendant bears the burden of proving both the availability of an adequate alternative forum and that considerations of convenience and judicial efficiency strongly favor litigating the claim in the alternative forum. See Mercier v. Sheraton Int'l, Inc., 935 F.2d 419, 423–24 (1st Cir. 1991); Piper Aircraft Co. v. Reyno, 454 U.S. 235, 254 (1981).

This court has previously identified such factors as "1) the plaintiff's choice of forum, 2) the relative convenience of the parties, 3) the convenience of the witnesses and location of documents, 4) any connection between the forum and the issues, 5) the law to be applied and 6) the state or public interests at stake." Momenta Pharms., Inc. v. Amphastar Pharms., Inc., 841 F. Supp. 2d 514, 522 (D. Mass. 2021) (citing Holmes Grp., Inc. v. Hamilton Beach/Proctor Silex, Inc., 249 F. Supp. 2d 12, 15 (D. Mass. 2002). Importantly, "[t]ransfer of venue is inappropriate . . . where its effect merely shifts the inconvenience from one party to another." Id. at 523 (citing Holmes Grp., 249 F. Supp. 2d at 18). Therefore, "[a] motion to transfer under § 1404(a) . . . calls on the district court to weigh in the balance a number of case-specific factors." Stewart Org., 487 U.S. at 29.

4

B.  Discussion

Both parties agree that New York law governs the action as stated in the Policy's choice-of-law provision. See Jackson. Aff., Ex. A, at ECF 15–16 [Doc. No. 12-1]; Def.'s Mem. 1 [Doc. No. 11]; Pl.'s Opp'n 17 [Doc. No. 17]. Arch asserts that its initial removal of this action into federal court eliminated the plaintiff's choice of forum because the suit no longer belongs to the original place of the filing. See Def.'s Mem. 6 [Doc. No. 11]. Callahan argues that, despite the New York choice of law provision, the state of Massachusetts should still be afforded presumptive weight because it is Callahan's home forum and the U.S. District Court for the District of Massachusetts frequently applies New York state law. See Pl.'s Opp'n 10 [Doc. No. 17].

1.  Callahan's Choice of Forum

In analyzing a motion to transfer venue, a plaintiff's choice of forum deserves presumptive weight. See Kleinerman v. Luxtron Corp., 107 F. Supp. 2d 122, 125 (D. Mass. 2000) (citing Nowak v. Tak How Investments, Ltd., 94 F.3d 708, 719 (1st Cir. 1996) ("At the outset, there is a presumption in favor of [the plaintiff's] chosen forum of Massachusetts."). "When a plaintiff chooses [their] home forum, the choice more likely represents considerations of convenience rather than vexation or harassment to the defendant, thus elevating the hurdle the defendant is required to clear to warrant transfer." Kleinerman, 107 F. Supp. 2d at 125 (citing Piper Aircraft Co., 454 U.S. at 255). Where a defendant seeks removal to federal court in the state where the plaintiff is at home and originally filed the litigation, removal does not affect these "considerations of convenience." Id. Accordingly, mere removal to federal court where the plaintiff is at home does not rebut the presumptive weight afforded to a plaintiff's choice of forum. See Piper Aircraft Co., 454 U.S. at 255–56 ("When the home forum has been chosen, it is reasonable to assume that this choice is convenient.").

5

Although Callahan keeps an office in New York, it is a Massachusetts Corporation with a principal place of business in Massachusetts. See Am. Compl. ¶ 4 [Doc. No. 15]. Accordingly, Callahan's home forum is Massachusetts. See BNSF Ry. v. Tyrrell, 581 U.S. 402, 413 (2017) (explaining that a corporation is "at home" where it is incorporated and maintains its principal place of business). Thus, Callahan's choice of a forum located in Massachusetts is due deference following Arch's removal to the U.S. District Court for the District of Massachusetts. See Piper Aircraft Co., 454 U.S. at 255.

      2.      Relative Convenience of the Parties

Arch claims New York is not an inconvenient venue because (1) Callahan's Connecticut counsel resides closer to New York than Massachusetts; (2) Callahan maintains an office in White Plains, New York, which is located in the Southern District of New York. See Def.'s Mem. 4–5 [Doc. No. 11]. Callahan responds that counsel's location is irrelevant to a venue analysis and, even if it were, Callahan's counsel is "conveniently located between Massachusetts and New York." Pl.'s Opp'n 9–10 [Doc. No. 17].

To rebut the presumptive weight of a plaintiff's choice of venue, a defendant must show that its choice of venue is "substantially more convenient" than plaintiff's. Holmes Grp., 249 F. Supp. 2d at 17. Courts have considered this factor to balance the "comparative financial abilities of the parties and the cost of litigation [on] the party in the best position to absorb and spread it." Sigros v. Walt Disney World Co., 129 F. Supp. 2d 56, 71 (D. Mass. 2001). When "parties are commercial entities," they are "equally capable of litigating in [either state]." First State Ins. Co. v. XTRA Corp., 583 F. Supp. 3d 313, 319 (D. Mass. 2022) (affording relative convenience of parties minimal weight in transfer analysis for insurance coverage dispute between two commercial litigants).

Because Arch is a Missouri-based corporation, it cannot argue that New York is a "substantially more convenient" forum for Arch based on its home location. Arch's claim that the few hours' drive separating Massachusetts and New York would add only a "minimal inconvenience" for Callahan, see Def.'s Mem. 4–5 [Doc. No. 11], does not render New York "substantially more convenient" for either party, Holmes Grp., 249 F. Supp. 2d at 17. Finally, the location of counsel is not a relevant factor in assessing the convenience of the parties. See Dress v. Capital One Bank (USA), N.A., 368 F. Supp. 3d 178, 183 (D. Mass. 2019) ("The convenience of counsel is not a factor in determining whether to transfer a case; the location of counsel is irrelevant and improper for consideration in determining the question of transfer of venue."); In re Volkswagen AG, 371 F.3d 201, 206 (5th Cir. 2004) ("The word 'counsel' does not appear anywhere in § 1404(a), and the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a).").

Therefore, the relative convenience of the parties does not weigh in favor of transfer.

      3.      Convenience of Witnesses and Location of Documents

Arch argues that the most important factor supporting transfer is the location of the "underlying incident," i.e. the subcontractor default in Yonkers, New York. Def.'s Mem. 5 [Doc. No. 11]. Arch also claims that this litigation will require non-party discovery from New York-based entities, including documents from Callahan's subcontractor regarding the default. See id. Callahan argues that, because both parties agree that the Policy applies to the Loss, this dispute is limited to contact interpretation and will not require non-party discovery. See Pl.'s Opp'n 8–9 [Doc. No. 17].

In Fed. Ins. Co. v. XTRA Intermodal, Inc., the court concluded that it was "unlikely . . . to resolve [the] issues solely by interpreting the language of the insurance contracts" because the issue centered on *whether* the insurance policy covered the loss. 2015 WL

7

4275181, at *6 (D. Mass. July 15, 2015). In contrast here, the parties' primary dispute does not concern the underlying facts and circumstances concerning the subcontractor's default. See Am. Compl. ¶¶ 16–17 [Doc. No. 15] (stating that "Arch has not disputed the amount of the [L]oss" nor "that the [Loss] is covered under the Policy . . ."); see also Def.'s Mem. 2 [Doc. No. 11] (reciting that "Arch agreed that there was coverage for the [Loss] . . . ."). Accordingly, the court finds that this dispute primarily involves interpretation of the Policy language, which renders the location of witnesses to the underlying incident less significant to the court's analysis. See Am. Compl., at ECF 5–7 [Doc. No. 15].

Even if the court were to consider these witnesses' locations, Arch has made no showing that the subcontractor or building owner, who both have offices in New York, see Def.'s Mem. 2 [Doc. No. 11], would be overly burdened by a Massachusetts forum. Cf. Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1355–56 (1st Cir. 1992) (affirming dismissal based on *forum non-conveniens* where, inter alia, material witnesses were located in Turkey). Regarding written discovery production, technological advances have increased the accessibility of documents so that their location is no longer ". . . a significant [factor] in determining a motion to transfer venue." Rosenthal v. Unum Grp., 2018 WL 1250483, at *3 (D. Mass. March 12, 2018). Thus, neither the location of witnesses nor documents weighs in favor of transferring to New York.

    4.  Connection between Issues and Public Interest Factors

Arch asserts that New York has a substantial interest in the litigation, because the underlying incident occurred at the 57 Alexander Street Project in New York. See Def.'s Mem. 5 [Doc. No. 11]. Callahan asserts that Massachusetts has a substantial interest because (1) the Policy was issued and delivered in Massachusetts; (2) both Callahan and its insurance broker executed the contract in Massachusetts; (3) Callahan is a Massachusetts corporation with a

principal place of business in Bridgewater, Massachusetts; and (4) fourteen of Callahan's other projects covered under the Policy are in Massachusetts. See Pl.'s Opp'n 7 [Doc. No. 17].

Public interest factors courts consider in the transfer analysis include "administrative difficulties that follow for courts when litigation is piled up in congested centers instead of being handled at its origin; that jury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation; and that there is a local interest in having localized controversies decided at home." Perez v. Metan Marine, Inc., 2018 WL 1664697, at *8 (D.P.R. Apr. 4, 2018) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508–09 (1947)).

Arch asserts that Callahan's ties to Massachusetts are "irrelevant" because "the coverage dispute arose from an incident which occurred in [another state]." Def.'s Mem. 6 [Doc. No. 11] (citing Fed. Ins. Co., 2015 WL 4275181, at *6) (determining that insurance coverage depends on factual circumstances when underlying incident is disputed)). However, in Fed. Ins. Co., not only was the underlying loss in dispute but also no party had a substantial connection to Massachusetts. See 2015 WL 4275181, at *6–7 (The insurance policies at issue "were issued more than twenty years ago, and there do not appear to be any modern-day connections linking the parties to the Commonwealth of Massachusetts."). Here, in contrast, Massachusetts retains an interest in the dispute where Callahan is a Massachusetts corporation who obtained insurance coverage while based in the Commonwealth. See Am. Compl. ¶ 4 [Doc. No. 15].

Further, the disputed Policy covers fourteen additional projects Callahan has in Massachusetts, affording substantial local interest in the business practices of the current venue. See Sahani Aff., Ex. 2, at ECF 2 [Doc. No. 16-2]. Other factors like diminishing congestion resulting from transfers and allowing the home community to arbitrate both point to Massachusetts having a more substantial interest in the litigation than New York. See Gulf Oil

Corp., 330 U.S. at 508–09 (discussing administrative difficulties of transfer). Accordingly, the court finds that Massachusetts has a more substantial interest in resolving the matter.

        5.        Choice-of-Law Provision

Because the parties do not dispute the validity of the Policy's choice-of-law provision, the court only considers whether the provision favors transfer. Arch argues that this case should be transferred to New York so that the governing law matches the forum. See Def.'s Mem. 4 [Doc. No. 11]. Callahan disagrees that the provision mandates transfer. See Pl.'s Opp'n 10 [Doc. No. 17].

"A district's familiarity with the governing law is an appropriate factor to consider" in deciding whether to grant a motion to transfer. Montoya v. CRST Expedited, Inc., 285 F. Supp. 3d 493, 501 (D. Mass 2018) (quoting Johnson v. VCG Holding Corp., 767 F. Supp. 2d 208, 217 (D. Me. 2011)). However, a choice of law not corresponding to the jurisdiction in which the case is filed or removed does not mandate transfer in favor of litigation in the corresponding state whose law the parties contracted. See Atl. Marine Constr. Co. v. United States District Court, 571 U.S. 49, 52 (2013). Rather, a choice-of-law provision is merely one factor in the balance concerning venue. See id. at 52, 59.

The choice-of-law provision in the Policy states that New York law governs the "meaning, interpretation or operation of any term, condition, definition or provision" of the Policy or any alleged breach of the Policy. Jackson. Aff., Ex. A, at ECF 15–16 [Doc. No. 12-1]. While the U.S. District Court for the Southern District of New York is "more familiar" with New York contract law, Montoya, 285 F. Supp. 3d at 501, district courts in Massachusetts frequently apply New York law. See, e.g., Auctus Fund, LLC v. Sunstock, Inc., 405 F. Supp. 3d 218, 222 (D. Mass. 2019) (applying New York law in breach of contract); Spath v. Federal Ins. Co., 101 F. Supp. 2d 49, 52 (D. Mass. 2000) (interpreting insurance policy provision under New York

law); Bradley v. Dean Witter Realty, Inc., 967 F. Supp. 19, 25–26 (D. Mass. 1997) (using New York Statute of Frauds to determine contract formation). This court is "not aware of any exceptionally arcane features of [New York] contract law that are likely to defy comprehension by a federal judge sitting in [Massachusetts]." Atl. Marine Constr., 571 U.S. at 67–68. Therefore, the Policy's choice-of-law provision alone does not require transfer.

Ultimately, given the balance of the plaintiff's choice in forum, convenience of the parties, state interests, and this court's ability to apply New York state law, Arch has failed to overcome the presumptive weight afforded to Callahan's choice of Massachusetts as a venue.

### III.    Motion to Dismiss

#### A. Standard of Review

In assessing a complaint under the standard set out in Fed. R. Civ. P. 12(b)(6), the court assumes "the truth of all well-pleaded facts" and draws "all reasonable inferences in the plaintiff's favor." Nisselson v. Lernout, 469 F.3d 143, 150 (1st Cir. 2006). To survive dismissal, a complaint must contain sufficient factual material to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . [f]actual allegations must be enough to raise a right to relief above the speculative level[.]" Id. at 555 (citations omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

#### B.    Discussion

Massachusetts law prohibits unfair or deceptive business and insurance practices under Chapters 93A and 176D. Mass. Gen. Laws ch. 93A, 176D. New York law does not provide analogous statutory claims. Arch contends that "the Agreement's choice of law provision means

11

that [New York] law governs *any actions related to* the Agreement even if [Arch's] conduct was unfair and deceptive." Def.'s Mem. 9 [Doc. No. 11] (quoting ePresence, Inc. v. Evolve Software, Inc., 190 F. Supp. 2d 159, 165 (D. Mass. 2022)) (internal quotations omitted) (emphasis added). Callahan argues that the provision does not bar its statutory claims because the choice of law clause fails to bind the "rights and obligations" of the parties. Pl.'s Opp'n 16–17 [Doc. No. 17].

Where a choice-of-law provision binds the "rights and obligations" of the parties, Massachusetts statutory claims are barred outside of the chosen state's laws. See, e.g., Ne. Data Sys. v. McDonnell Douglas Computer Sys., 986 F.2d 607, 609–10 (1st Cir. 1993). However, courts permit those claims where the choice-of-law provision merely "govern[s]" or "construe[s]" the agreement. Jacobson v. Mailboxes Etc. U.S.A., Inc., 419 Mass. 572, 575, 646 n.9, N.E.2d 741, 746 n.9 (Mass. 1995) ("The agreement does not state that the rights of the parties are to be governed by California law but only that the agreement is to be governed and construed by California law. The choice of law clause does not purport to bar [the statutory claims]."); Kleiner v. Cengage Learning Holdings II, Inc., 66 F.4th 28, 32 (1st Cir. 2023) (holding that New York law did not govern breach of Massachusetts statutory duty when contract stated only "'[t]his Agreement shall be construed and governed' according to New York law" and did "not otherwise select any state's law as governing the parties' rights and obligations that are created by statute . . . .").

Accordingly, statutory claims outside of required law may be permitted in circumstances when the choice-of-law provision only controls the agreement, rather than the parties' rights or obligations. See, e.g., Vertex Surgical, Inc. v. Paradigm Biodevices, Inc., 390 F. App'x. 1, 3 (1st Cir. 2010) (construing "terms of this Agreement" to mean "'written terms' and leaving the law

governing other issues (like statutory post-termination obligations) untouched by the contracting parties").

Here, the choice-of-law provision states that "the laws of the State of New York shall apply to *any controversy or claim* between any Insured and [Arch] . . . *arising out of or in any way related to* this Policy, including but not limited to disputes as to the meaning, interpretation or operation of any term, condition, definition or provision of this Policy or any alleged breach of this Policy." Jackson. Aff., Ex. A, at ECF 15–16 [Doc. No. 12-1] (emphasis added). Applying New York law to "any controversy or claim . . . arising out of or in any way related to th[e] Policy," id., "covers a lot more ground than" merely stating New York law governs or construes the four corners of the Policy. Vertex, 390 F. App'x at 2–3.

Callahan's statutory claims solely relate to Arch's interpretation of the Policy and the resulting coverage dispute. See Am. Compl., at ECF 6–7 [Doc. No. 15]. These are claims "arising out of or in any way related to th[e] Policy[.]" Jackson. Aff., Ex. A, at ECF 15–16 [Doc. No. 12-1]. While the Amended Complaint [Doc. No. 15] references Arch's "misrepresent[ations]" and its failure to "act reasonably," Am. Compl., at ECF 6 [Doc. No. 15], "those additional 'state of mind' or 'bad motive' allegations" do not "take these claims outside the scope of the contractual language that says [New York] law will govern," Ne. Data Sys., 986 F.2d at 609. The Policy's choice-of-law provision means that New York law governs any claims related to the Policy even if the defendant's conduct was unfair or deceptive. Id. at 610. Accordingly, the provision mandates dismissal of Callahan's statutory claims unless "the result would not be contrary to either state's public policy." Chesebro v. Com. Ins. Co., 2018 WL 4511982, at *2 (D. Mass. July 18, 2018) (citing cases).

13

Callahan disagrees, contending that "[t]he law of Massachusetts allows for 93A claims to survive, notwithstanding contractual terms that would otherwise preclude such claims[.]" Pl.'s Opp'n 14 [Doc. No. 17] (citing H1 Lincoln, Inc. v. South Washington Street, LLC, 489 Mass. 1, 25–26, 179 N.E.3d 545, 564–65 (denying dismissal of Chapter 93A claims where parties contracted for complete waiver of liability)). Callahan's reliance on H1 Lincoln is misplaced, however, as that case was decided under Massachusetts law and here, Callahan has agreed that New York law applies. See Pl.'s Opp'n 17 [Doc. No. 17]; H1 Lincoln, 489 Mass. at 25–26, 179 N.E.3d at 564–65.

### IV.     Conclusion

For the foregoing reasons, Defendant's Motion to Transfer Venue to the Southern District of New York is DENIED. Defendant's Partial Motion to Dismiss the statutory claims in Count II of the Amended Complaint [Doc. No. 15] is GRANTED.

IT IS SO ORDERED.

February 27, 2026                               /s/ Indira Talwani
                                                United States District Judge